**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| WAYNE BING, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-cv-2121 (RC) |
| | : | | |
| v. | : | Re Document No.: | 17 |
| | : | | |
| THE ARCHITECT OF THE CAPITOL, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS; *SUA SPONTE* GRANTING PLAINTIFF LEAVE TO FURTHER AMEND HIS COMPLAINT**

## I. INTRODUCTION

Plaintiff Wayne Bing has sued his former employer the Architect of the Capitol for racial discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Congressional Accountability Act, 2 U.S.C. §§ 1301 *et seq.* ("CAA"). Defendant moves to dismiss any claims based on acts that occurred prior to August 5, 2015 for lack of subject-matter jurisdiction on the ground that those claims were not timely exhausted pursuant to the CAA's mandatory administrative procedure. Mr. Bing counters that acts occurring before that date were part of a hostile work environment he had alleged in his Amended Complaint, and that this hostile work environment encompassed acts occurring both before and after the August 5, 2015 statutory cutoff date. Therefore, Mr. Bing argues, his claims based on acts occurring before August 5, 2015 are not time barred, pursuant to *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Defendant responds that Mr. Bing did not include a hostile work environment claim in his Amended Complaint, preventing his invocation of *Morgan* from making pre-cutoff date acts timely. In the alternative, it argues that even if Mr. Bing's Amended Complaint had included

a hostile work environment claim, the acts he alleges are not sufficiently severe or pervasive to constitute a hostile work environment.

The Court finds that Mr. Bing did not clearly include a hostile work environment claim in his Amended Complaint, and therefore does not reach Defendant's arguments as to the sufficiency of those pleadings. However, because Defendant was on notice as to Mr. Bing's potential hostile work environment claim from his AOC administrative complaint and original complaint in this case, the Court also grants Mr. Bing leave to further amend his complaint to clearly include a hostile work environment claim and to provide a more detailed explanation of how the acts he alleges constituted such a claim. Additionally, because Mr. Bing may be capable of alleging a hostile work environment in his further amended complaint, Defendant's partial motion to dismiss for lack of subject-matter jurisdiction is denied.

## II. FACTUAL BACKGROUND[1]

Plaintiff Wayne Bing, an African American man, worked for the Architect of the Capitol ("AOC") as a Recycler in the Senate Office Buildings for eight years prior to his termination in September 2015. Am. Compl. ¶¶ 2, 32, ECF No. 9. Mr. Bing alleges that prior to his termination, he suffered discrimination based on his race and retaliation for publicly stating that he believed African American employees, including himself, were subject to differential treatment. Am. Compl. ¶¶ 24–25. Mr. Bing alleges that he was subject to a "discriminatory environment," Am. Comp. ¶ 42, and that "[e]mployees who were not of African American descent were treated more favorably by receiving awards and performance recognition, and given the benefit of the doubt." Am. Compl. ¶ 44. He also alleges that prior to his termination, he was "disciplined more severely

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

2

than employees who were not of African American descent, even though his comparators engaged in similar events that warranted suspension." Am. Compl. ¶ 45.

Mr. Bing specifically alleges that his treatment at work took a turn for the worse after he voiced his concerns about the differential treatment of African American employees during a March 24, 2015 staff meeting. He alleges that, after this staff meeting, he immediately "began to experience retaliation . . . such as being written up for leaving trash on the floor, and other petty offenses." Am. Compl. ¶ 25. Mr. Bing points to three specific instances during which he believes he was retaliated or discriminated against, apart from his termination and the withholding of an award to which he believes he was entitled: on March 30, 2015, he was falsely accused of not reporting to a location where he was supposed to be; on July 7, 2015, he was falsely accused of not clocking out and of leaving trash on the floor; and on July 17, 2015, he was falsely accused of failing to follow the direct order of a supervisor. Am. Compl. ¶¶ 27, 28, 30. After two of the false accusations had occurred, on July 10, 2015, Mr. Bing was issued a proposal for removal for violating the AOC Standards of Conduct, Am. Compl. ¶ 29, and despite challenging his proposed removal by disputing the basis for his termination, he was informed in early September that he was being removed from his position, effective September 18, 2015. Am. Compl. ¶¶ 31–32; Def. Ex. 2 at 1, ECF No. 17-2.

Mr. Bing filed a request for counseling with the AOC's Office of Compliance on February 1, 2016, alleging "disparate treatment in the terms and conditions of his employment" and "reprisal/retaliation resulting in a hostile work environment and his termination for having engaged in protected activity in violation of section 201 and 207 of the Congressional Accountability Act." Def. Ex. 3 at 1, ECF No. 17-3. The AOC Office of Compliance issued Mr. Bing an End of Mediation Notice on July 26, 2016, giving Mr. Bing the right to sue in federal

court. Am. Comp. ¶ 35. He then filed this suit on October 24, 2016, alleging one count of race discrimination and reprisal in violation of Title VII. *See* Compl. at 3, ECF No. 1. On January 26, 2017, he filed his amended complaint, alleging one count of race discrimination in violation of Title VII and one count of retaliation in violation of Title VII. Am. Compl. at 7–8. Defendant has now moved to dismiss for lack of subject-matter jurisdiction all claims against it arising from acts that occurred before August 5, 2015.

### III.  STANDARD OF REVIEW

When defending against a Rule 12(b)(1) motion to dismiss, plaintiffs bear the burden of establishing a court's subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A court, however, must accept "the allegations of the complaint as true," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and "construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Where necessary to resolve a jurisdictional challenge, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.") Overall, however, 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350).

4

## IV. ANALYSIS

Defendant has moved to dismiss "all individual claims for which [Mr.] Bing failed to exhaust his administrative remedies," which it believes include all claims arising from acts that occurred before August 5, 2015. Def.'s Memo. Support Partial Mot. Dismiss (Def.'s Memo.) at 2, ECF No. 17. However, Mr. Bing contends that the discriminatory or retaliatory acts he alleges in his Amended Complaint, including the ones occurring prior to August 5, 2015, were part of a "continuing violation" of Title VII, as part of a hostile work environment, and therefore were timely exhausted. Pl.'s Opp'n Def.'s Partial Mot. Dismiss (Pl.'s Opp'n) at 3, ECF No. 18. In response, Defendant contends that Mr. Bing did not plead a claim of hostile work environment in his Amended Complaint, and that even if he had, the acts alleged in his Amended Complaint do not meet the level of severity required to properly state such a claim, thereby precluding his claims based on those acts from the benefit of the continuing violation doctrine. Def.'s Reply Pl.'s Opp'n Def.'s Partial Mot. Dismiss (Def.'s Reply) at 1–2, ECF No. 19.

Therefore, at issue in this motion are the questions of whether Mr. Bing included a hostile work environment claim in his Amended Complaint, and whether, if he did, such an allegation would grant this Court subject-matter jurisdiction over discriminatory acts that occurred prior to August 5, 2015. For the reasons set forth below, this Court finds that Mr. Bing did not sufficiently allege a hostile work environment in his Amended Complaint, but grants him leave to amend his complaint so that he may include such a claim in this litigation if he so chooses.

### 1. Subject-Matter Jurisdiction under the Congressional Accountability Act

"The Congressional Accountability Act . . . extends the protections of a number of federal remedial statutes, including Title VII of the Civil Rights Act of 1964, to employees of the legislative branch." *Hyson v. Architect of the Capitol*, 802 F. Supp. 2d 84, 89 (D.D.C. 2011).

While the substantive standards of the CAA largely mirror Title VII's, the statute contains its own jurisdictional provisions, including a provision conditioning subject-matter jurisdiction on an employee's timely completion of counseling and mediation for each claim for which the employee seeks redress in federal court. 2 U.S.C. §1408(a); *see also Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) (holding that while the administrative process for claims under Title VII is not a prerequisite to subject-matter jurisdiction in federal court, the administrative process under the CAA is). Therefore, while in a Title VII case, failure to administratively exhaust a claim within the statutorily-prescribed period may be subject to waiver and estoppel under certain circumstances, *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579–80 (D.C. Cir. 1998), in CAA cases, failure to timely exhaust deprives federal courts of the ability to review a case. *See Ross v. United States Capitol Police*, 195 F. Supp. 3d 180, 199 (D.D.C. 2016) ("[S]uccessful completion of every CAA prerequisite regarding each claim is a jurisdictional prerequisite, which means that it cannot be waived by this Court, much less any party or agent of a party.")

A legislative branch employee seeking redress for unlawful discrimination must complete a three-step process, which includes a request for counseling "not later than 180 days after the date of the alleged violation." 2 U.S.C. §1402(a). Mr. Bing submitted his request for counseling on February 1, 2016. 180 days prior to that date is August 5, 2015. Thus, any claims accruing before August 5, 2015 would appear to be untimely unless found to be part of a claim for hostile work environment that continued until a date within 180 days of the request for counseling. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing

6

period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."). The only act alleged in Mr. Bing's Amended Complaint that occurred within the filing period is his termination. Am. Compl. ¶ 32.

**2. Mr. Bing's Amended Complaint does not include a hostile work environment claim.**

Defendant has argued that Mr. Bing's Amended Complaint did not include a claim of hostile work environment, and indeed, Mr. Bing never uses the phrase "hostile work environment" in his Amended Complaint. Instead, he alleges two broad violations of Title VII: race discrimination (Count One) and retaliation (Count Two). Count One encompasses two distinct types of race discrimination: first, a claim that Mr. Bing "has been subjected to differential treatment, and effectively terminated, based on his race," and second, a claim that "the discriminatory environment he experienced affected a term, condition, or privilege of his employment." Am. Comp. ¶ 42. Further, within his retaliation claim, Mr. Bing alleges that "[t]he foregoing actions by Defendant constitute the encouragement of other persons to . . . intimidate . . . Plaintiff." Am. Compl. ¶ 53.

After Defendant questioned in its partial motion to dismiss the timeliness of claims based on acts occurring before August 5, 2015, however, Mr. Bing argued in his opposition that such claims were timely because they were part of his hostile work environment claim. He continued that since under *Morgan*, only one act contributing to a hostile work environment need fall within the statutory period in order for all acts contributing to a hostile work environment to be timely, his termination, which he believes contributed to a hostile work environment and which occurred after the statutory cutoff date, makes the earlier acts timely as well. Pl.'s Opp'n at 3. The Defendant expressed its surprise at this argument in its reply, remarking that "[i]nexplicably, Plaintiff's opposition to Defendant's Motion to Dismiss relies exclusively on the 'continuing

violation theory' and *National Railroad Passenger Corp. v. Morgan*, 526 U.S. 101 (2002), despite the fact that Plaintiff's Amended Complaint does not include a hostile work environment claim and *Morgan* very clearly explained that where discrete acts such as termination are alleged, as in this case, only incidents that took place within the timely filing period are actionable." Def.'s Reply at 1 (citing *Morgan*, 536 U.S. at 114–15).

Plaintiff's opposition brief was not the first time that the phrase "hostile work environment" had arisen in this litigation, however. In Mr. Bing's proceedings before the AOC's Office of Compliance, he "formally requested counseling on February 1, 2016, alleging disparate treatment in the terms and conditions of his employment and being subjected to multiple disciplinary actions based on his race, sex and national origin," as well as "to reprisal/retaliation resulting in a *hostile work environment*." Def.'s Ex. 3, ECF No. 17-3 (emphasis added). Additionally, in his original complaint, which is no longer operative, Mr. Bing alleged that he "timely filed his EEO Complaint with the AOC's Office of Compliance alleging discrimination, *hostile work environment* and retaliation." Compl. ¶ 11 (emphasis added).

Focusing solely on the Amended Complaint, Defendant argues that the allegations and language there, taken together, are not sufficient to find that Mr. Bing had included a claim for hostile work environment. Additionally, Defendant argues that even if a claim for hostile work environment could be found in the Amended Complaint, Mr. Bing's invocation of *Morgan* fell short because he had not alleged acts that were sufficiently severe or pervasive to survive a motion to dismiss and because his termination could not be included in a claim for hostile work environment when it was a discrete employment act. Def.'s Reply at 1, 2. The Court addresses each argument in turn.

**A. Since Mr. Bing failed to clearly include a hostile work environment claim in his Amended Complaint, the Court grants him leave to further amend his complaint.**

While Defendant argues that Mr. Bing's Amended Complaint did not include a claim for hostile work environment, and therefore that his invocation of *Morgan* was improper, courts have long held that under certain circumstances, plaintiffs need not cite to the exact legal theory that entitles them to relief in order to survive a motion to dismiss, or even an opposing party's motion for summary judgment, as long as they have alleged sufficient facts to put the defendant on notice that such a claim exists. *See e.g.*, *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (per curiam) (holding that former police officers suing the city for violation of due process rights in their terminations need not expressly invoke § 1983); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 305 (D.D.C. 2015) (assessing the plaintiff's claims under the ADEA in a motion to dismiss "despite Plaintiff's failure to, twice, include a citation to that statute in his complaint").

This leniency has been applied in Title VII cases under certain circumstances as well. For example, courts in this circuit have allowed claims for hostile work environment to proceed even when such a claim was not expressly included in the complaint. In *Steele v. Schafer*, the D.C. Circuit found the argument that a complaint did not assert a hostile work environment claim "unavailing" when the complaint alleged "discrimination," "which in principle includes a hostile work environment theory," especially when the complaint specifically requested reassignment to a "less hostile working environment" and already included a constructive discharge claim premised on a hostile work environment. 535 F.3d 689, 694 (D.C. Cir. 2008). Additionally, in *Reshard v. LaHood*, 443 F. App'x 568, 570 (D.C. Cir. 2011), the D.C. Circuit found that the plaintiff's allegations of an "'environment' of 'direct acts of racial discrimination,' an 'environment of professional suppression' and discriminatory conduct 'designed to make

9

plaintiff leave the agency' arguably could have sufficed to place the defendant on notice of a hostile work environment claim." Ultimately, however, the court found that to allow plaintiff to raise such a claim eight years after the filing of the lawsuit, in a motion for reconsideration, could cause severe prejudice to the defendant, and therefore could not be allowed.

Here, Mr. Bing did not state a claim for hostile work environment as clearly as the plaintiffs in *Steele* and *Reshard*, or indeed clearly enough for this Court to definitively find that he did include such a claim in his Amended Complaint. However, it appears from his opposition to Defendant's partial motion to dismiss that he wishes to assert a hostile work environment claim now. Defendant has been on notice that such a claim could exist from Mr. Bing's hostile work environment allegation in his AOC complaint, his allegation of that fact in his original complaint, and the nature of the acts he alleges in his Amended Complaint. Additionally, as this opinion comes early in these proceedings, in a denial of a partial motion to dismiss, Defendant will not be prejudiced by this grant, as it will still have many opportunities left to defend itself against such a claim. Therefore, the Court will grant Mr. Bing leave to further amend his complaint to include a hostile work environment claim and include factual allegations to support it.

### B. Adequacy of Hostile Work Environment Allegation and Use of the Continuing Violation Doctrine

Defendant has argued in the alternative that even if the Court had found that Mr. Bing had stated a claim for hostile work environment, reviewing the complaint "in the light most favorable to Plaintiff, the totality of the allegations do not rise to the level of severity necessary to support a hostile work environment claim based on race." Def.'s Reply at 3. Because the Court has granted Mr. Bing leave to amend his complaint, it does not reach the question of

whether the facts included in Mr. Bing's Amended Complaint meet the specificity or severity required to survive a motion to dismiss for failure to state a claim.[2]

Although the Court will not consider this argument in the disposition of this motion, it does note that had it been properly raised, it might have had merit. Therefore, Mr. Bing should take this argument into consideration while preparing his second amended complaint. In furthering this argument, Defendant has emphasized that in order to ultimately prevail on a claim for hostile work environment, a plaintiff must show that his employer subjected him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). Therefore, in revising his complaint, Mr. Bing should consider whether the acts he alleges could plausibly be severe or pervasive enough that, if proven true, a fact finder would be able to conclude that they created a hostile work environment. "While a plaintiff is not required to plead a prima facie case of hostile work environment in the complaint, the alleged facts must be able to support such a claim." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000)).

Another issue, not raised by the Defendant directly, but which Mr. Bing may want to consider when amending his complaint to include a hostile work environment claim, is whether he sufficiently alleged that his termination was part of a coherent hostile work environment that

---

[2] Even if the Court had not granted leave to amend, it would have been hesitant to consider an argument that Defendant did not raise until its reply, giving Mr. Bing no opportunity to respond. Courts in this circuit "generally refuse[] to entertain arguments raised for the first time in a[] reply brief." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992). "Considering an argument advanced for the first time in a reply brief . . . is not only unfair . . . , but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986).

also included the allegedly discriminatory acts that occurred before August 5, 2015. Defendant has argued in its reply that "the holding of *Morgan* cuts directly against Plaintiff's arguments" on the availability of the continuing violation doctrine since "'[if] a plaintiff alleges discrete acts of discrimination or retaliation—acts like refusal to hire, termination, failure to promote, or denial of a transfer—the plaintiff's failure to comply with the applicable filing deadline will cause those claims to be time barred, even when they are related to acts alleged in timely filed charges.'" Def.'s Reply at 3 (citing *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 361 (D.D.C. 2014) (quoting *Morgan*, 536 U.S. at 113–14)). However, in making this argument, Defendant ignores case law from this circuit finding that employment actions that could be labeled discrete acts of discrimination—and would therefore be actionable on their own—can also be part of a claim for hostile work environment when part of one coherent employment practice.

The Supreme Court held in *Morgan* that "a charge alleging a hostile work environment claim [] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. In *Baird*, the D.C. Circuit emphasized this component of *Morgan*, reversing a district court holding that "plaintiff cannot rely on the discrete acts upon which she bases her discrimination and retaliation claims to support her hostile work environment claim." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011) (citing *Baird v. Snowbarger*, 744 F. Supp. 2d 279, 295 (D.D.C. 2010)). In doing so, the D.C. Circuit explained that "acts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim (i.e., be 'sufficiently severe or pervasive . . . ,'), and must be adequately connected to each other (i.e., 'all acts which constitute the claim are part of the same unlawful employment

12

practice), as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird*, 662 F.3d at 1252 (internal citations omitted). However, the court explained, it found "no authority for the idea that particular acts cannot as a matter of law simultaneously support different types of Title VII claims . . . . Thus, although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own." *Id.*

Therefore, in theory, a discrete employment action such as a termination may under certain circumstances be included in a claim for hostile work environment. "The *Morgan* principle is not, however, an open sesame to recovery for time-barred violations. Both incidents that occurred before the statutory cutoff date and those that occurred afterwards can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve[] the same type of employment actions, occur[ ] relatively frequently, and [are] perpetrated by the same managers.'" *Id.* at 1251 (citing *Morgan*, 536 U.S. at 120–21).

It is possible that, should Mr. Bing choose to allege more details connecting pre- and post-August 5 acts in a further amended complaint, the Court would be able to find that all of these acts, including his termination, could have contributed to a coherent hostile work environment, thereby granting it subject-matter jurisdiction over the earlier acts. Therefore, at this time, Defendant's partial motion to dismiss for lack of subject-matter jurisdiction is denied. If Mr. Bing fails to draw this connection, however, he will only be able to use the acts occurring before August 5, 2015 as background evidentiary support for his timely claim of discriminatory

or retaliatory termination. *Morgan*, 536 U.S. at 113; *Ross v. United States Capitol Police*, 195 F. Supp. 3d 180, 196 (D.D.C. 2016).

## V.  CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss is **DENIED**.  It is **FURTHER ORDERED** that Plaintiff is granted leave to further amend his complaint to present a more definite and detailed statement of his hostile work environment claim on or before December 1, 2017. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 27, 2017                                                                                  RUDOLPH CONTRERAS
                                                                                                                          United States District Judge